**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER SYLVESTER WRIGHT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SUSAN SPEECE, *et al.*** | : | **NO.  08-4784** |

## MEMORANDUM OPINION

Savage, J.                                                         **May 14, 2009**

The plaintiff, Walter Sylvester Wright Sr. ("Wright"), has filed this *pro se* action, alleging that the defendants, Dr. Susan Speece ("Speece") and Dr. Blaine Steensland ("Steensland"), the Chancellor and the Senior Director of Student Affairs, respectively, of Penn State Berks ("Penn State"), violated his Eighth and Fourteenth Amendment rights by conditioning his admission to Penn State upon his attending free counseling sessions.  The defendants have moved for summary judgment, arguing that Wright has not alleged any harm caused by the defendants, has no basis  for an Eighth Amendment claim and has not alleged facts sufficient to maintain a Fourteenth Amendment claim.  Additionally, they argue that there is no allegation of wrongdoing against Speece and 42 U.S.C. § 1983 does not support vicarious liability.

The undisputed evidence, viewed in the light most favorable to Wright and with all reasonable inferences drawn in his favor, does not support a claim of Eighth or Fourteenth Amendment violations.  Also, Speece cannot be held liable under § 1983 because there is no vicarious liability under that provision.  Therefore, summary judgment will be granted in favor of the defendants.

**Factual and Procedural History**

This is not a case where an applicant was denied admission.  It is one where he refused to comply with a reasonable condition that was mandated by school policy.  Only when he chose not to meet the school's requirements was he asked to leave.

While enrolled at Penn State as a non-degree student in the Summer 2008 session, Wright sought admission as a degree candidate.  Because his application disclosed a recent expulsion from another university[1] and a criminal history involving at least one act of violence,[2] Penn State sought additional references from Wright.  See Compl. at Ex. A; Defs. Statement of Undisputed Facts ("Defs. Facts") (Doc. No. 20) ¶¶ 3-4.  The request was made  pursuant to its published policy to ensure that Wright's known past behavior did not "endanger the health and safety of the University Community members."  Defs' Facts at Ex. 1 ("Policy on Pre-Admission Review and Re-enrollment for Applicants with Known Behavior Problems").  Wright argues that he had submitted all of these materials when Penn State suspended him in June 2008 for allegedly having failed to submit all required materials.[3]  Nevertheless, both parties agree that Wright was subsequently reinstated and

---

[1] Exhibits attached to Wright's complaint evidence that he was expelled from Widener University in January 2008.  *See* Compl. at Ex. E.  Wright also references this expulsion in his Responses to Defendants Statesments [sic] of Undisputed Facts (Doc. No. 23) ¶ 3.

[2] Wright admits that he was convicted of driving while intoxicated in 2003 and harassment arising from a domestic dispute at some later date, and that he was on probation for at least one of these offenses.  *See* Compl. at 1; 34/09 Tr. at 12:22-23; 3/11/09 Tr. at 10:5-11.  Although Wright claimed that he has no history of violence, see 3/4/09 Tr. at 15:3-4; 3/11/09 Tr. at 11:8-9, his criminal record, a public document, notes a conviction for simple assault, robbery, and theft by unlawful taking in 1994.  He was acquitted of aggravated assault in 1995 and 2001, and harassment and stalking in 2002.  Finally, he pleaded guilty to harassment and stalking in 2001and harassment in 2003.

[3] Wright alleges that he made all required submissions prior to his alleged expulsion.  *See* Compl. at 1; 3/11/09 Tr. at 8:16-20.  Exhibits attached to his complaint, however, evidence that his application was not completed until after July 8, 2008, and thus after his "expulsion."  *See* Compl. at Ex. A (July 8, 2008 Letter from Steensland to Wright); *see also* Defs. Statement of Undisputed Facts at ¶¶ 5, 13.

allowed to continue his summer courses. *See* Compl. at 2-3; Defs.' Statement of Undisputed Facts ¶¶ 5-6. After completing the summer session, Wright enrolled in classes for the Fall 2008 and Spring 2009 semesters.

In August 2008, after submitting the required materials for pre-admission review, Wright was conditionally admitted to Penn State as a degree candidate. In light of his history, Wright was required, as a condition of his admission, to attend five free counseling sessions with a Penn State counselor during the Fall 2008 Semester while continuing his studies. After Wright refused to attend counseling sessions, Penn State cancelled his Spring 2009 classes and placed his admission on registration hold. *See* Defs. Statement of Undisputed Facts ¶¶ 16-17; Plfs. Responses to Defs. (Doc. No. 23) ¶ 5.

Before the end of the Fall 2008 semester and before Penn State cancelled his Spring 2009 classes, Wright filed this *pro se* action in October 2008. He seeks a $3.2 million judgment against the defendants for alleged violations of his Eighth and Fourteenth Amendment rights. He does not request equitable relief.

In his *pro se* complaint, which is unclear,[4] Wright claims discrimination. The complaint references generally "racial discrimination." But, at oral argument, he talked only about his prior criminal record forming the basis for the alleged discrimination. He claims that he was treated unfairly by Steensland, who allegedly told him during their first meeting that he was not "worthy to be an Penn State Berks [sic] degree student"[5] and that he should apply to an "urban school." Compl. at 1. Wright alleges that these were "racial

---

[4] For example, Wright references having "positively reinforced my unique strength of rationality and common courteous for humanity." Compl. at 4.

[5] At oral argument, Wright contended that Steensland's "Penn State worthy" statement was discriminatory "because he [was] discouraging me to apply to school -- to Penn State Berks." Wright, O.A., 3/11/09, 8:4-6.

statements" and "abrasive terminology conveyed in a racial discrimination [sic] manner." *Id*. at 2.[6]   Finally, in his *pro se* complaint, he contends that Speece is subject to vicarious liability for Steensland's actions.   *Id*. at 5.   His complaint attaches four letters from Steensland concerning Wright's application as a degree candidate student, five letters from third parties submitted to Penn State by Wright during the course of applying for degree candidate admission,[7] and the complaint report that Wright submitted to Penn State based on the same facts at issue in this case.

The defendants initially moved to dismiss Wright's complaint pursuant to Fed. R. Civ. P. 12(b)(6).   *See* Defs.' Mot. to Dismiss Plf.'s Compl. (Doc. No. 8).   Oral argument was heard on March 4 and 11, 2009.   During each of these hearings, Wright argued that requiring him to attend counseling constituted cruel and unusual punishment.   He admitted that he refused to attend counseling as a prerequisite for his admission.   *See* 3/11/09 Tr. at  43:23-44:4.

After notice to the parties, the motion to dismiss was converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).[8]   *See* 3/11/09 Tr. at 44:6-18; Order, March 12, 2009 (Doc. No. 16).   The defendants were permitted to submit additional briefing

---

[6]  At oral argument, commenting on these alleged statements by Steensland, Wright said that "[t]he verbal is that black people don't simply belong in urban schools.  I'm not Penn State Berks worthy and I'm wasting his time.  I need to go somewhere else and apply to another school." Wright, O.A., 3/11/09, 7:21-24.

[7]  These five letters submitted to Penn State include a recommendation for Wright to attend The George Washington University in Washington, D.C.; two letters of general recommendation; a letter reporting that he had attended Reading Area Community College from Winter 2005 to Spring 2007 with a cumulative GPA of 2.353 out of a possible 4.0; and a letter from his former parole officer stating that he had successfully completed his parole.

[8]  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

by March 26, 2009, and Wright was given until April 9, 2009, to respond.  He was invited

to submit any additional evidence by way of affidavits or otherwise.

The day following the second oral argument, Wright filed a two-page motion titled

"Motion for Summary Judgment."  *See* Doc. No. 17.  Although this motion claims to rely on

"supporting affidavits forwarded with claim," Wright actually refers only to the exhibits he

submitted with his complaint, none of which are affidavits.  *See* Doc. No. 21 (attaching the

exhibits referenced in, but not attached to, Doc. No.17.)  Wright's motion essentially asks

for judgment on his complaint and does not raise any additional issues of fact or law.[9]

### Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In examining their motion, we must view the facts in the light most favorable to

Wright, as the nonmoving party, and draw all reasonable inferences in his favor.  *Intervest,

Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

As the parties moving for summary judgment, the defendants bear the initial burden

of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).

If the defendants have successfully demonstrated this, Wright cannot rest on the

pleadings.  To defeat summary judgment, he must come forward with probative evidence

establishing the *prima facie* elements of his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323-24 (1986); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).  He must

show more than the "mere existence of a scintilla of evidence" for elements on which he

---

[9] It is unclear why Wright filed this motion, which he labeled a motion for summary judgment.  Wright was only obligated to file a response to the defendants' motion for summary judgment.  *See* 3/11/09 Tr. at 44:19-24.

bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for [Wright,] the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## Discussion

Because Wright is proceeding *pro se*,[10] his complaint must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)*; Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). He has alleged claims directly under the Eighth and Fourteenth Amendments against the defendants, presumably in their individual and official capacities as administrators of Penn State.[11]  Even though Wright does not reference § 1983 in his complaint, we shall assume that he asserts his claims pursuant to § 1983. *See, e.g., Warnett v. Corr. Med. Servs.*, 2008 WL 930739, at *3 n.2 (D.N.J. Mar. 31, 2008) (Rodriguez, J.) (presuming the plaintiff intended to use "the § 1983 enforcement vehicle to bring the Eight and Fourteenth Amendment Constitutional claims").

## No Vicarious Liability Under § 1983

Wright does not allege any actual wrongdoing by Speece. He merely claims that she should be held accountable for Steensland's alleged actions. *See* Compl. at 5. When

---

[10]  Wright is no stranger to litigation in this court. He has filed at least four actions prior to this one. *See* U.S. District Court, Eastern District of Pennsylvania, Civil Action Nos. 04-2858, 04-3270, 06-0769, 08-4514.

[11]  Wright failed to specify whether he asserts his claims against the defendants, who do not contest that they qualify as state actors, in their official or individual capacities.

asked at oral argument about his claims against Speece, Wright said:

> she is the head administrator at Penn State Berks. She can be at home soaking in the tub and something goes wrong, you know what I'm saying, if policy and procedure is not executed right at Penn State Berks, she is liable because she is the head administrator. She is the head administrator. If anything go [sic] down wrong, she is intertwined because she is the head of Penn State Berks.

3/11/09 Tr. at 36:7-14. Since oral argument, Wright has apparently conceded to Speece's dismissal in his motion for summary judgment when he asks the court to "please promptly remove Dr. Susan Speece[,] the Chancellor of Penn State Berks[s], name [sic] from the caption, due to [t]he fact she is no longer liable." Plf.'s Mot. at 2-3.

Without Wright's recent concession, Speece would still be dismissed. Wright sought only to hold her vicariously liable for Steensland's alleged conduct. Section 1983, however, does not recognize vicarious liability. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978); *Baraka v.* McGreevey, 481 F.3d 187, 210 (3d Cir. 2007); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Therefore, judgment will be entered in favor of Speece.

We now turn to Wright's § 1983 claims for Eighth and Fourteenth Amendment violations against Steensland.

### Eighth Amendment

The Cruel and Unusual Punishments Clause of the Eighth Amendment does not extend beyond criminal punishment. Only convicted prisoners are protected by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (holding that the Eighth Amendment does not apply when public school teachers impose corporal punishment); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Additionally,

the protection of the Eighth Amendment is limited to the "unnecessary and wanton infliction of pain." *Ingraham*, 430 U.S. at 1412.  As a former student at Penn State claiming cruel and unusual punishment, Wright cannot seek the protection of the Eighth Amendment, which does not apply in the university setting and does not proscribe any of the actions about which he complains.[12]

### Fourteenth Amendment

Wright broadly alleges that Steensland violated his Fourteenth Amendment rights. It is not clear whether he also seeks to allege a violation of his equal protection and due process rights.  Nonetheless, considering the entire record in the light most favorable to Wright, there are no facts, disputed or undisputed, to support either an equal protection or a due process claim.

### *Equal Protection*

Wright alleges that he has been treated differently because he is an African-American.  His complaint alludes to "racial statements" by Steensland.  The specific comments were that Wright should apply to an "urban school" and he was not Penn State "worthy."  Compl. at 1-2.[13]  Additionally, Wright repeatedly argues that he was treated like a "Fourteenth Amendment citizen" and a "corporate slave" because he was required to submit additional references and to attend counseling in order to continue taking classes

---

[12] Wright was informed during oral argument that the Eighth Amendment does not apply in his case. 3/4/09 Tr. at 11:8-13.  *See, e.g., Goodreau v. Rectors & Visitors of Univ. of Virginia*, 116 F. Supp. 2d 694, 710 (W.D. Va. 2000) (holding that the Eighth Amendment did not apply to student plaintiff); *Marsh v. Del. State Univ.*, No. Civ. 05-00087, 2007 WL 521812, at *2 (D. Del. Feb. 15, 2007) (Farnan, J.) (same).

[13] Wright also characterizes these same statements by Steensland as "abrasive terminology conveyed in a racial discrimination [sic] manner," "racial discrimination comments [sic]," "racial discrimination behaviors [sic]," and "vile racial discriminatory actions."  Compl. at 2, 4, 5.  Additionally, he alleges that Steensland "deliberately breached equal opportunity laws."  *Id.* at 4.

at Penn State.  *See* 3/4/09 Tr. at 5:3-4; 3/11/09 Tr. at 23:9-12, 32:12-16; *see also* 3/11/09

Tr. at 39:1-6 (arguing he was treated differently than others).

Wright contends that he was the "only one" required to "sign a contract" to attend

school, referring to the August 16, 2008 letter informing him that he was required to attend

counseling.  3/4/09  Tr. at 2:21-23, 3:2-4.  Yet, he has failed to proffer *any* evidence that

he was treated differently from other similarly situated individuals.  Without such evidence,

an equal protection claim cannot survive a motion for summary judgment.  *See City of*

*Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Keenan v. City of Phila.*,

983 F.2d 459, 465 (3d Cir.1992).

At oral argument, Wright was advised that he needed to produce evidence of

similarly situated individuals having been treated differently.  *See* 3/11/09 Tr. at 44:25-

45:25.  He has not done so.  Wright was also informed that the current record - without

additional evidence - does not show that any actions were motivated by race.  See 3/4/09

Tr. at 14:7-10.  Without any evidence that he has been treated differently because of his

race, his claims of unequal treatment cannot survive.  *See, e.g., Manning v. Temple Univ.*,

157 F. App'x 509, 514 (3d Cir. 2005) (affirming grant of summary judgment when student

plaintiff failed to provide any evidence of discrimination to support her equal protection

claim).

### *Due Process*

To successfully claim a violation of his due process rights under the Fourteenth

Amendment, Wright must come forward with evidence that he was either denied

procedural or substantive due process.  Even though it is not clear which, if any, claim

Wright seeks to assert under the Fourteenth Amendment's due process clause, the record

does not support either claim.

Wright has not alleged that Steensland or Penn State deprived him of any process required by federal law. *See Bierley v. Grolumond*, 174 F. App'x 673, 676 (3d Cir. 2006) (per curiam). Nor is there any allegation that the notice or administrative remedies provided by Penn State were inadequate. Wright merely alleges that "all administrative remedies offered at the Penn State berks [sic] campus has been [sic] vigorously exhausted and no monetary relief can be granted." Compl. at 7.

The record indicates that Wright filed a Complaint Information Report[14] with Penn State on July 17, 2008. *See* Compl. at Ex. C. This report, however, is dated a month *before* he was told that he must attend the counseling sessions before the end of the Fall 2009 semester to continue taking classes at Penn State. See Compl at Ex. A (Letter from Steensland to Wright of Aug. 18, 2008 ). There are no allegations that he followed up his complaint through any administrative remedy regarding his complaints about Steensland's comments. Wright made no effort to appeal Penn State's decision that he must attend counseling. Having failed to do so, he cannot now claim that he was denied procedural due process. *Reilly v. City of Atlantic City*, 532 F.3d 216, 235 (3d Cir. 2008); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Unlike procedural due process, substantive due process does not focus on a particular procedure. Rather, it looks to the defendant's conduct. The question is whether the defendant acted in an arbitrary or capricious manner. *See United Artists Theatre*

---

[14] Wright's Report, dated July 17, 2008, alleged that Steensland "stated 'that he didn't not [sic] want me enrolled as a degree student @ Penn State Berks. He negatively enforced that I wasn't Penn State worthy. He also stated that I should apply to an urban school in Philadelphia, since I am not wanted @ Penn State Berks campus, and if I don't ahere to his comments he would make sure that I don't be [sic] admitted @ the Berks campus or any other campus. Black people belong in urban schools.' [sic]" *See* Compl. at Ex. C.

*Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003).  To constitute a denial of substantive due process, Steensland's conduct must have been so abusive that it shocks the conscience.  *Id.* (citing *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir.1994)).  Wright's allegations that he was "expelled" when he was admittedly reinstated and required to attend counseling "for no apparent reason" simply do not meet this standard.  *See* Compl. at 3; 3/11/09 Tr. at 8:8-20, 14:23-25, 15:15-18, 22:13-16, 26:5-10, 29:15-18, 31:1-5, 43:20-25.  Wright admits that he refused to attend counseling and that he would have been permitted to continue taking classes if he had done so.  Compl. at 4; 3/4/09 Tr. at 7:16-8:21; 3/11/09 Tr. at 44:2-4.  In short, the defendants did not deprive him of an opportunity to pursue his education.

There is simply no evidence in the record to conclude that Steensland acted in an arbitrary fashion by following established school policy that required Wright, a student with a history of violence, to submit additional references and attend counseling.

### Conclusion

Wright has not established a *prima facie* case of race discrimination under § 1983. Nor has he presented a legally cognizable claim under the Eighth or Fourteenth Amendments.  Furthermore, Speece cannot be held liable under § 1983.  Therefore, summary judgment will be granted in favor of the defendants.